1  [Counsel of record listed on next page]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  TINA HOPSON, individually and on        No. CV-08-0844 EDL
    behalf of others similarly situated,
12                                          **JOINT MOTION FOR ORDER:**
                  Plaintiff,                **(1) CONDITIONALLY CERTIFYING**
13                                          **SETTLEMENT CLASS AND**
                                            **COLLECTIVE ACTION;**
14        vs.                               **(2) PRELIMINARILY APPROVING**
                                            **PROPOSED SETTLEMENT;**
15  HANESBRANDS INC.; SARA LEE              **(3) APPROVING NOTICE TO CLASS AND**
    CORPORATION and Does 1 through 50,      **ELECTION NOT TO PARTICIPATE;**
16  inclusive,                              **(4) APPROVING NOTICE OF PROPOSED**
                                            **SETTLEMENT; AND (5) SETTING FINAL**
17                Defendants.               **APPROVAL HEARING DATE;**
                                            **MEMORANDUM IN SUPPORT OF**
18                                          **MOTION**

19                                          Date:      July 22, 2008
                                            Time:      9:00 a.m.
20                                          Courtroom: E (15th Floor)
                                            Judge:     Hon. Elizabeth D. Laporte
21

22

23

24

25

26

27

28

1   EDWARD J. WYNNE (Bar No.165819)
    J.E.B. PICKETT (Bar No. 154294)
2   WYNNE LAW FIRM
    100 Drakes Landing Road, Suite 275
3   Greenbrae, California 94904
    Telephone: 415.461-6400
4   Facsimile: 415.461-3900
    ewynne@wynnelawfirm.com
5   jebpickett@wynnelawfirm.com

6   Attorneys for Plaintiff
    TINA HOPSON
7

8   M. KIRBY C. WILCOX (Bar No. 078576)
    JEFFREY D. WOHL (Bar No. 96838)
9   ANNE W. NERGAARD (Bar No. 235058)
    PAUL, HASTINGS, JANOFSKY & WALKER LLP
10  55 Second Street, 24th Floor
    San Francisco, California 94105-3441
11  Telephone: 415.856.7000
    Facsimile: 415.856.7100
12  kirbywilcox@paulhastings.com
    jeffwohl@paulhastings.com
13  annenergaard@paulhastings.com

14  Attorneys for Defendants
    HANESBRANDS INC. and
15  SARA LEE CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 58773449.3

1

**TABLE OF CONTENTS**

2

**Page**

3   I.     INTRODUCTION ...................................................................................................1

4   II.    BACKGROUND ...................................................................................................1

    III.   SUMMARY OF SETTLEMENT TERMS .........................................................2

5          A.    The Settlement Class .................................................................................2

6          B.    The Maximum Settlement Amount; the Net Settlement Amount .............3

7          C.    The Settlement Allocation Formula .........................................................3

           D.    The Release of Claims ..............................................................................4

8          E.    The Class Notice .......................................................................................4

9   IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL...........................4

10         A.    For Purposes of the Settlement, Plaintiff's Claims Merit Class Action Treatment............5

11               1.    Numerosity ....................................................................................6

                 2.    Commonality .................................................................................6

12               3.    Typicality ......................................................................................7

13               4.    Adequate Representation ...............................................................7

                 5.    Predominance of Common Questions ...........................................8

14               6.    Superiority .....................................................................................8

15         B.    The Nationwide Class Satisfies 29 U.S.C. § 216(b).................................9

16         C.    The Settlement Is Fair, Reasonable, and Adequate ................................10

17               1.    The Value of the Settlement Supports Approval.........................11

                       a.    The Risks Inherent in Continued Litigation are Great ............11

18                     b.    The Amount Offered in the Settlement Supports Approval. ...................12

19                     c.    Informal Discovery Supports Approval ...................................13

                       d.    Earlier Payment Supports Approval .........................................13

20               2.    The Fairness of the Distribution Supports Approval...................14

21                     a.    The Plan of Allocation for Distributing the Settlement to the Class Members............14

22                     b.    Settlement Administration ........................................................14

23                     c.    Employer Taxes ........................................................................15

                       d.    Residual ....................................................................................15

24               3.    The Class Notice/Settlement Share/Election Not To Participate .......................15

25  V.     THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING ..............................16

26  VI.    CONCLUSION ...................................................................................................17

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acosta v. Trans Union LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)..............................................................................5

*Amchem Products Inc. v. Woodward*,
  521 U.S. 591 (1997) ...............................................................................................9

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
  616 F.2d 305 (6th Cir. 1980) ................................................................................4, 5

*Baldwin & Flynn v. Nat'l Safety Associates*,
  149 F.R.D. 598 (N.D. Cal. 1993) .............................................................................5

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ............................................................................5, 6, 7

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................11

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
  917 F.2d 1171 (9th Cir. 1990) .................................................................................7

*Culinary/Bartender Trust Fund.*,
  244 F.3d at 1162 ..................................................................................................8, 9

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................5

*Elkins v. Equitable Life Ins. of Iowa*,
  1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ...........................................................9

*Gerlach v. Wells Fargo & Co.*,
  2006 WL 824652 (N.D. Cal. March 28, 2006)........................................................9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................5, 6, 7, 8

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...................................................................................7

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ...................................................................................6

*Holden v. Burlington Northern, Inc.*,
  665 F. Supp. 1398 (D. Minn. 1987).........................................................................1

*In re General Motors Corp.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................................................11

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................13

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .............................................................................16

*In re Mego Fin. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................13

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ........................................................................7, 8, 9

# TABLE OF AUTHORITIES
(continued)

**Page**

*Mendoza v. United States,*
    623 F.2d 1338 (9th Cir. 1980) ...................................................................................16

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ...................................................................................................15

*Officers for Justice v. Civil Serv. Comm'n of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ...............................................................................10, 13

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) .....................................................................................................9

*Scholtisek v. Eldre Corp.,*
    229 F.R.D. 381 (W.D.N.Y. 2005) ..............................................................................10

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) .....................................................................................15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .........................................................................5, 10, 11

*Strube v. American Equity Inv. Life Ins. Co.,*
    226 F.R.D. 688 (M.D. Fla. 2005) ................................................................................9

*Valentino v. Carter-Wallace,*
    97 F.3d 1227 (9th Cir. 1996) .......................................................................................8

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) .......................................................................................4

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.,*
    2006 WL 2642528 4 (N.D. Cal. Sept. 14, 2006) .........................................................6

*Zinser v. Accufix Research Institute, Inc.,*
    253 F.3d 1188 (9th Cir. 2001) .....................................................................................8

## STATUTES

United States Code
    Title 28, Section 1715..................................................................................................16
    Title 29, Section 216(b) .....................................................................................9, 10, 11

## RULES AND REGULATIONS

Code of Federal Regulations
    29 C.F.R. § 541.205(b), (c) (2004) ............................................................................12

Federal Rule of Civil Procedure
    Rule 23.................................................................................................................*passim*

## OTHER AUTHORITIES

Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* §
    10:573 (The Rutter Group 2006)..................................................................................5

DOL Op. Ltr. FLSA 2004-10NA (Aug. 17, 2004)) .............................................................12

MANUAL FOR COMPLEX LITIGATION (Third) § 30.41 (The Rutter Group 1995).........................1

1

## NOTICE OF JOINT MOTION AND JOINT MOTION

2    PLEASE TAKE NOTICE that, on July 22, 2008, at 9:00 a.m. or as soon thereafter as counsel

3    may be heard, in Courtroom E of this Court, located at 450 Golden Gate Ave., 15th Floor, San

4    Francisco, California, plaintiff Tina Hopson and defendants Hanesbrands Inc. and Sara Lee Corporation

5    will and hereby do move jointly for preliminary approval of their settlement of this class action as set

6    forth in their Settlement Agreement attached to the accompanying Declaration of Anne W. Nergaard in

7    Support of Joint Motion for Preliminary Approval of Class Action Settlement ("Nergaard Declaration")

8    as Exhibit 1 (the "Settlement"). Specifically, the parties move for an order:

9        (i)    certifying for settlement purposes only the settlement class described in the Settlement

10              (the "Class");

11       (ii)   granting preliminarily approval of the terms of the Settlement, including the amount of

12              the settlement fund; the amount of distributions to class members; the procedure for

13              giving notice to class members; and the procedure for opting out of the Settlement;

14       (iii)  appointing plaintiff as Class Representative for the Settlement Class;

15       (iv)  appointing Wynne Law Firm as Class Counsel for the Class;

16       (v)   approving the form of notice of the Settlement and directing that notice and notice of

17              their right to elect not to participate in the Settlement be sent to members of the Class as

18              provided in the Settlement;

19       (vi)  approving the notice of the Settlement sent to the Attorney General of the United States

20              and the responsible state officials;

21       (vii)  appointing Rust Consulting, Inc., as the Settlement Administrator; and

22       (viii) scheduling a hearing on the question of whether the Settlement should be finally

23              approved as fair, reasonable and adequate.

24       This joint motion is made on the grounds that the Settlement is the product of arms-length, good-

25   faith negotiations; is fair and reasonable to the Class; and should be preliminarily approved, as more

26   fully discussed in the accompanying Memorandum in Support of Joint Motion for Preliminary Approval

27   of Class Action Settlement ("Memorandum in Support").

28       This joint motion is based on this notice; the accompanying Memorandum in Support, Nergaard

LEGAL_US_W # 58773449.3

1    Declaration, and proposed Order: (1) Conditionally Certifying Settlement Class; (2) Preliminarily

2    Approving Proposed Settlement; (3) Approving Notice to Class and Election Not to Participate;

3    (4) Approving Notice of Proposed Settlement; and (5) Setting Hearing for Final Approval; the Court's

4    record of this action; all matters of which the Court may take notice; and oral and documentary evidence

5    presented at the hearing on the motion.

6    Dated:  June 16, 2008.          EDWARD J. WYNNE
                                      J.E.B. PICKETT
7                                     WYNNE LAW FIRM

8

9                                     By:  _____/s/_____

10                                              Edward J. Wynne
                                              Attorneys for Plaintiff
11                                            TINA HOPSON

12   Dated:  June 16, 2008.          M. KIRBY WILCOX
                                      JEFFREY D. WOHL
13                                    ANNE W. NERGAARD
                                      PAUL, HASTINGS, JANOFSKY & WALKER LLP
14

15

16                                    By:  _____/s/_____

                                              Jeffrey D. Wohl
17                                            Attorneys for Defendants
                                      HANESBRANDS INC. and SARA LEE
18                                            CORPORATION

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 58773449.3

1

**MEMORANDUM IN SUPPORT OF JOINT MOTION**

2

**I.     INTRODUCTION**

3          Plaintiff Tina Hopson alleges that she and other Service Associates employed by defendants

4   Hanesbrands Inc. and Sara Lee Corporation are entitled to unpaid overtime wages under state and

5   federal law.  In addition, plaintiff claims that defendants violated multiple provisions of the California

6   Labor Code, including the failure to provide meal and rest periods, proper wage statements, and wages

7   at the proper frequency or in a timely manner.  On April 8, 2008, the parties engaged in a full-day

8   private mediation and reached an agreement to settle this action.

9          Through this motion the parties are seeking only preliminary approval of the Settlement.

10  Preliminary approval should be granted so long as the proposed settlement is "within the range of

11  possible approval."  *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995); *Holden v.*

12  *Burlington N., Inc.*, 665 F. Supp. 1398, 1402 (D. Minn. 1987).  The eventual fairness hearing will

13  provide the Court another opportunity to review the Settlement — with the benefit of Class Member

14  input.

15         The parties here have made the minimal showing necessary for preliminary approval.  The

16  proposed Settlement was reached through arms-length bargaining with the assistance and considerable

17  involvement of both experienced counsel and a respected mediator.  The proposed Settlement will result

18  in financial benefit to participating claimants, particularly in light of defendants' defenses and relatively

19  limited liability.  The proposed notice to the Class is more than adequate under the relevant standards.

20  And plaintiff contends, and defendants do not contest, that the requested amounts for plaintiff's class

21  representative fee and class counsel's fees and expenses are fair, reasonable, and adequate.

22         The parties now move jointly for preliminary approval of the Settlement pursuant to Federal

23  Rule of Civil Procedure 23(e).

24  **II.     BACKGROUND**

25         On May 22, 2007, plaintiff commenced this class action against defendants in Marin Superior

26  Court.  Plaintiff did not serve defendants with her complaint at that time.  On May 21 and June 15, 2007,

27  plaintiff sent notices to the California Labor and Workforce Development Agency (the "LWDA")

28  alleging that defendants violated various provisions of the California Labor Code.

1  On July 27, 2007, plaintiff filed and served on defendants a First Amended Complaint. In the

2 First Amended Complaint, plaintiff alleged that defendants misclassified plaintiff and a class of

3 California-based Hanesbrands Service Representatives as exempt under California wage-and-hour laws

4 and, on that basis, failed to pay plaintiff and the proposed class for overtime wages, to provide them

5 with meal and rest periods, to timely pay them their wages, and to provide them with correctly itemized

6 wage statements. Plaintiff also alleged that with regard to such matters, defendants engaged in unfair

7 competition in violation of California Business and Professions Code section 17200 *et seq.* Plaintiff also

8 sought civil penalties ("PAGA Penalties") for the violations of the California Labor Code she alleged

9 pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et*

10 *seq.* Plaintiff subsequently amended the complaint to add a cause of action under the Fair Labor

11 Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and sought to pursue a collective action under the

12 FLSA on behalf of a nationwide class of salaried Service Associates.

13  Defendants answered plaintiff's Complaint and denied plaintiff's material allegations.

14 Defendants maintain that if this case were to be litigated, the Court should not certify the class action

15 proposed by plaintiff; that plaintiff and the proposed class were properly classified as exempt under

16 California wage-and-hour law and the FLSA, and that defendants bore no liability to plaintiff and the

17 proposed class and collective action; and raised other defenses.

18  On February 7, 2008, defendants removed the action to this Court, pursuant to federal-question

19 jurisdiction, 28 U.S.C. § 1331 (FLSA, 29 U.S.C. § 201 *et seq.*), and supplemental jurisdiction over

20 plaintiff's state-law claims.

21  On April 8, 2008, the parties engaged in good-faith negotiations, presided over by Mediator

22 David Rotman of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder LLP. Each side, represented by

23 its respective counsel, recognized the substantial risk of an adverse result in this action. During this

24 mediation, the parties agreed to settle this action and all other matters covered by the Settlement.

25 **III. SUMMARY OF SETTLEMENT TERMS**

26  **A. The Settlement Class.**

27  The Settlement Class includes (i) all persons who worked as full-time Service Associates for

28 defendants in the State of California at any time during the period from May 22, 2003, to September 1,

-2-

1   2007; (ii) all persons who worked as full-time Service Associates for defendants anywhere in the United

2   States other than the State of California at any time during the period from May 22, 2004, to September

3   1, 2007; and (iii) all persons who worked as part-time Service Associates for defendants in the State of

4   California at any time during the period from May 22, 2004, to September 1, 2007.   Settlement

5   Agreement (Declaration of Anne Nergaard in Support of Joint Motion for Preliminary Approval of Class

6   Action Settlement ("Nergaard Decl."), ¶ 3, Exh. 1), § I.C.  The parties estimate that there are 209 class

7   members.

8         **B.      The Maximum Settlement Amount; the Net Settlement Amount.**

9         The proposed settlement provides that defendants will pay a Maximum Settlement Amount of

10   $400,000. (Settlement Agreement, § III.A.1.) From the Maximum Settlement Amount will be deducted

11   the Class Representative Payment to plaintiff for her services in prosecuting this action and representing

12   the Settlement Class (which will not exceed $5,000); the Class Counsel Fees and Expenses to plaintiff's

13   counsel for attorneys' fees and litigation expenses and costs in prosecuting this action and attending to

14   the settlement (which will not exceed $100,000 in attorneys' fees and $12,500 in litigation expenses and

15   costs); a payment of $1,500 to the California Labor and Workforce Development Agency ("LWDA")

16   for its share of the settlement of civil penalties pursuant to PAGA; and the Settlement Administrator's

17   reasonable fees and expenses in administering the Settlement. (*Id.*, §§ I.N, II.B-II.E., III.C.1., 2., III.D.)

18         **C.      The Settlement Allocation Formula.**

19         The Net Settlement Amount will be distributed to all Claimants (*i.e.*, those Class Members who

20   timely submit a valid Claim Form and Consent to Join FLSA Collective Action) based on the number of

21   their work weeks during the class period compared to the total work weeks for the Settlement Class as a

22   whole.  (*Id.*, §§ I.B, III.A.2.)  Full-time Class Members employed in California will have their work

23   weeks increased by a factor of 1.5 to compensate for the additional remedies available under California

24   law to misclassified employees compared to the remedies available under the FLSA to misclassified

25   employees. (*Id.*, § III.B.1.)  Part-time Class Members will have their work weeks decreased by a factor

26   of 0.5 to account for (i) the fewer hours on average they worked compared to the hours that full-time

27   class members on average worked and (ii) the fact that while they worked for defendants, they were paid

28   on an hourly basis and were paid overtime compensation for overtime hours worked. (*Id.*, § III.B.2.)

1

### D.     The Release of Claims.

In return for these payments, plaintiff will grant defendants a complete release of claims; Claimants will release all federal wage-and-hour claims, pursuant to the FLSA; and Participating Class Members will release all state wage-and-hour claims, based on the failure to pay overtime wages, the failure to provide meal and rest periods, the failure to provide proper wage statements, and the failure to provide wages at the proper frequency or in a timely manner.  (*Id.*, § III.G.)

### E.     The Class Notice.

All Class Members will be given due notice of the Settlement (including the number of work weeks shown by defendants' records and their estimated Settlement Shares), the opportunity to contest the number of work weeks shown for them, and the opportunity to opt out of the Settlement.  (*Id.*, § III.F.)  If five percent or more of Class Members, measured either by their number or the value of their Settlement Shares compared to the Settlement Class as a whole, elect not to participate, then defendants will have the right to reject the Settlement and it will be null and void.  (*Id.*, § III.F.8.)

Other terms and conditions of the Settlement are set forth in the parties' Settlement Agreement.

## IV.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The law favors settlement.  This is particularly true in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

A court may approve a settlement of a class action only when it finds after a hearing that the settlement is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(C)(6).  Judicial review of a class action settlement entails a two-step process.  "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval."  *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46, at 53-55 (West 1977)), *overruled in irrelevant part*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Armstrong*, 616 F.2d at 314.  At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final

1    determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Id.* at 314.

2    In reviewing a class action settlement, a court undertakes two fundamental inquiries. "First, the

3    district court must assess whether a class exists . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

4    2003). In other words, the court must determine that the lawsuit qualifies as a class action under Rule

5    23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to

6    ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)). Second, the court must

7    determine whether the settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. When

8    parties reach a settlement agreement prior to class certification, "courts must peruse the proposed

9    compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v.*

10    *Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) (quoting *Staton*, 327 F.3d at 952).

11    **A.    For Purposes of the Settlement, Plaintiff's Claims Merit Class Action Treatment.**[1]

12    Plaintiff need only make a "*prima facie* showing" of the requirements under Rule 23. *See*

13    Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 10:573 (The Rutter

14    Group 2006). In determining the propriety of class certification, a court may not delve into the

15    underlying merits of the claims. The fundamental question "'is not whether . . . plaintiffs have stated a

16    cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"

17    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted). Accordingly, the Ninth

18    Circuit has established that, when ruling on the propriety of class certification, a district court "is bound

19    to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17

20    (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it

21    requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety*

22    *Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).

23    Under these governing standards, the Settlement Class meets the requirements for certification

24    under Rule 23(a) and Rule 23(b)(3).

25

26

---

27    [1]    Defendants agree that plaintiff's class claims merit class action treatment only for purposes of
the Settlement. In the event that the Settlement is not finally approved, defendants reserve all rights to

28    contest plaintiff's right to certification of her class and collective claims.

### 1. Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." FED. R. CIV. P. 23(a)(1). Here, "'[i]mpractical' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class to meet the numerosity requirement." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05-2320, 2006 WL 2642528, at *4 (N.D. Cal. Sept. 14, 2006) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). Although there is no "magic number" necessary to satisfy numerosity, and "a court must examine the specific facts of each case to determine that numerosity has been satisfied," it is generally held that "numerosity may be *presumed* at a level of forty members." *Id.* at *4 & n.3.

This class is composed of 209 employees, all of whom are readily identifiable from defendants' payroll records. Therefore, the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement must be "construed permissively." *Hanlon*, 150 F.3d at 1019. Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie*, 524 F.2d at 902.

The Settlement Class shares common legal questions. For full-time Class Members, the issues were whether: (i) defendants required Class Members to perform their duties in a similar manner; (ii) defendants had a policy of improperly classifying Class Members as exempt employees for purposes of federal and state wage-and-hour laws; and (iii) if defendants improperly classified Class Members as exempt, whether this was done knowingly. For California Class Members (full-time and part-time), the issues were whether defendants violated multiple California Labor Code provisions, including the requirement to provide (i) meal and rest periods, (ii) proper wage statements, and (iii) wages at the proper frequency or in a timely manner.

LEGAL US W # 58773449.3

### 3.    Typicality

Rule 23(a)(3) requires that the representative plaintiff has claims "typical of the claims . . . of the class." Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 1020. In other words, the named plaintiff need not be "identically situated" with all other class members. "It is enough if their situations share a 'common issue of law or fact' and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (quoting *Blackie*, 524 F.2d at 904).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted). The test of typicality is thus "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted).

Here, plaintiff contends that her claims arise out of the same type of factual and legal circumstances surrounding the claims of each Class Member. Plaintiff contends that she performed the same duties for defendants as Class Members, and she alleges the same injuries — *i.e.*, that she was misclassified as exempt and that defendants failed to provide (i) meal and rest periods, (ii) proper wage statements, and (iii) wages at the proper frequency or in a timely manner.

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and her counsel "have any conflicts of interest with other class members," and whether the named plaintiff and her counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between plaintiff and class members.

Nor are there any perceived conflicts with plaintiff's counsel. Moreover, plaintiff's counsel, who have substantial class action experience, can adequately represent the class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

1

### 5.    Predominance of Common Questions

2   The predominance inquiry focuses on whether the class is "'sufficiently cohesive to warrant

3   adjudication by representation.'" *Culinary/Bartender Trust Fund*, 244 F.3d at 1162 (citation omitted).

4   Central to this question is "'the notion that the adjudication of common issues will help achieve judicial

5   economy.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation

6   omitted), *amended*, 273 F.3d 1266 (9th Cir. 2001).

7   Here, without waiving its opposition to class certification should the Settlement not be approved

8   and for purposes of the Settlement only, defendants agree that the central inquiries here are whether

9   defendants misclassified full-time Class Members as exempt under federal and state overtime laws and

10  whether defendants violated certain provisions of the California Labor Code. Considerations of judicial

11  economy favor litigating a predominant common issue once in a class action instead of thousands of

12  times in separate lawsuits. "'When common questions present a significant aspect of the case and they

13  can be resolved for all members of the class in a single adjudication, there is clear justification for

14  handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022

15  (citation omitted).

16

### 6.    Superiority

17  To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must

18  compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable

19  alternative to a class action necessarily means that a class action satisfies the superiority requirement.

20  "'[I]f a comparative evaluation of other procedures reveals no other realistic possibilities, th[e]

21  [superiority] portion of Rule 23(b)(3) has been satisfied.'" *Culinary/Bartender Trust Fund*, 244 F.3d at

22  1163 (citation omitted; last alteration in original); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d

23  1227, 1235-36 (9th Cir. 1996) ("[A] class action is a superior method for managing litigation if no

24  realistic alternative exists.").

25  In *Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority

26  requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of

27  $1,330. Here, as in *Culinary/Bartender Trust Fund*, "this case involves multiple claims for relatively

28  small sums." Furthermore, for purposes of the Settlement only, defendants do not contest that a class

-8-

1    action would be superior because it would "'permit the plaintiffs to pool claims which would be

2    uneconomical to litigate individually.'" *See Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (quoting

3    *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

4         Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these

5    factors are (A) the interest of members of the class in individually controlling the prosecution or defense

6    of separate actions; (B) the extent and nature of any litigation concerning the controversy already

7    commenced by or against members of the class; (C) the desirability or undesirability of concentrating

8    the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the

9    management of a class action. FED. R. CIV. P. 23(b)(3). However, when a court reviews a class action

10   settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a

11   district court "need not inquire whether the case, if tried, would present intractable management

12   problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). Here, the remaining factors

13   set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification:

14         •    Any class member who wishes to pursue a separate action can opt out of the Settlement.

15         •    The parties are unaware of any competing litigation regarding the claims at issue.

16         •    The parties agree that it would be desirable to resolve plaintiff's claims in this forum.

17   "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious

18   . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20

19   (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D.

20   Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'")

21   (citation omitted).

22         **B.    The Nationwide Class Satisfies 29 U.S.C. § 216(b).**

23         This case is also appropriate for collective certification under section 16(b) of the FLSA, 29

24   U.S.C. § 216(b). Under the FLSA, a collective action may be maintained by an employee on behalf of

25   others who are "similarly situated." 29 U.S.C. § 216(b). Courts follow a two-phase approach for

26   determining whether an FLSA action meets the "similarly situated" standard. *See, e.g., Gerlach v. Wells

27   Fargo & Co.*, No. 05-0585, 2006 WL 824652, at *1 (N.D. Cal. March 28, 2006) (quoting 29 U.S.C.

28   § 216(b)). In the initial, "conditional" certification phase, the "similarly situated" standard is more

-9-

JT. MTN. FOR PRELIMINARY APPROVAL
U.S.D.C., N.D. Cal., No. CV-08-0844-EDL

1  permissive than Rule 23 and requires only that the named plaintiff make a "'modest factual showing

2  sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or

3  plan that violated the law.'" *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (citation

4  omitted).

5        Here, plaintiff contends that the full-time Class Members are similarly situated for purposes of

6  conditional certification of a collective action under section 16(b) of the FLSA, 29 U.S.C. § 216(b).

7  Plaintiff and Class Members engaged in the same basic job duties. Plaintiff alleges that defendants had

8  a common practice of misclassifying Class Members as exempt from overtime pay requirements.

9  (Second Am. Compl. ¶¶ 12, 13.) Accordingly, conditional certification of settlement classes under

10  29 U.S.C. § 216(b) is appropriate.

11        **C.    The Settlement Is Fair, Reasonable, and Adequate.**

12        No single criterion determines whether a class action settlement meets the requirements of Rule

13  23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an

14  "exhaustive list" or suggesting which factors are most important. *See Staton*, 327 F.3d at 959. "The

15  relative degree of importance to be attached to any particular factor will depend upon and be dictated by

16  the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances

17  presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688

18  F.2d 615, 625 (9th Cir. 1982).

19        Due to the impossibility of predicting any litigation result with certainty, a district court's

20  evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing,

21  gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). The

22  ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a

23  whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district

24  court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.

25  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the

26  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."

27  688 F.2d at 625. Accordingly, the Ninth Circuit will not reverse a district court's approval of a class

28  action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests

JT. MTN. FOR PRELIMINARY APPROVAL
U.S.D.C., N.D. Cal., No. CV-08-0844-EDL

1  gave way to self-interest." *Staton*, 327 F.3d at 961.

2      Here, the parties reached a non-collusive settlement after sufficient informal discovery enabled

3  counsel to form educated assessments about the strength of plaintiff's claims, the validity of defendants'

4  defenses, and the value of the case.  Because obtaining class certification, overcoming defendants'

5  exemption defenses (which would be a complete defense to most of plaintiff's claims), and establishing

6  liability posed difficult hurdles for plaintiff that justified compromise of their claims, the Settlement falls

7  well within the range of reasonable outcomes and merits approval under Rule 23(e).

8         **1.**    **The Value of the Settlement Supports Approval**

9      To estimate the value of continuing to litigate, the plaintiffs considered the inherent risks, the

10  potential magnitude of a recovery, and the probable length of the delay in payment.

11         **a.**    **The Risks Inherent in Continued Litigation are Great.**

12      To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must

13  weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in

14  continued litigation.  *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present

15  value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk

16  of not prevailing, should be compared with the amount of the proposed settlement.") (citation omitted

17  and internal quotation marks); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

18      This factor supports final approval here.  The Settlement affords the Class prompt and substantial

19  relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the Class

20  from obtaining any recovery at all.  The outcome of class certification, trial and any attendant appeals,

21  were inherently uncertain.

22      In particular, plaintiff's principal claim in this lawsuit is that full-time Service Associates were

23  misclassified as exempt.  Defendants strongly deny liability for this claim.  Defendants maintain that

24  these claims fail because full-time Service Associates were properly classified as exempt under the

25  administrative exemption.  Among other things, these employees build relationships with retail stores,

26  train retail store management, and gather information from retail stores to provide recommendations to

27  Hanesbrands' management and account executives.  Equally as important, Service Associates operate

28  under minimal supervision.  In short, Service Associates are "promotion men [and women]" who

LEGAL US W # 58773449.3

1  administer the "operation[s] of the business" by, for example, "advising the management, . . .

2  negotiating, representing the company, . . . [and] promoting sales." 29 C.F.R. § 541.205(b), (c) (2004).

3  Furthermore, defendants maintain that most non-California Service Associates were properly

4  classified as exempt under the Motor Carrier Act prior to August 10, 2005. *See* DOL Op. Ltr. FLSA

5  2004-10NA (Aug. 17, 2004) (determining that "sales representatives" who visited customer sites daily

6  were exempt under the Motor Carrier Act; the sales representatives transported "various job-related

7  items necessary for the performance of the job" that were shipped from out of state either to a local

8  warehouse or the sales representative's home). The Motor Carrier Act exemption removes a substantial

9  number of work weeks from the putative class.

10  Moreover, class certification was also far from certain. There were important differences in how

11  Service Associates performed their duties among various stores and at different times of the year, and

12  multiple exemptions applied to the non-California class pre-August 10, 2005.

13  Thus, the considerable risk that defendants would prevail on their defenses and defeat any and all

14  recovery to the class warranted a compromise of the class claims.

15      **b.**  **The Amount Offered in the Settlement Supports Approval.**

16  Defendants have agreed to pay $400,000 to settle this lawsuit, with approximately $265,000

17  going to class members.[2] Even assuming that defendants had no defenses to plaintiff's claims (in fact,

18  they had several strong defenses to all claims), the Settlement would represent approximately 40% of the

19  potential recovery.

20  The Settlement Amount reflects the low potential damages plaintiff could obtain even if she

21  prevailed. There are only 209 employees in the class. The parties agree that full-time Class Members'

22  average yearly wages were just over $33,000 during the class periods; that there could be no recovery

23  after September 1, 2007, when defendants converted Service Associates to hourly employees; that the

24  number of overtime hours worked prior to September 1, 2007, was very low — at most, less than one

25  hour of overtime per week on average; and that California part-time Service Associates were overtime

26  eligible during the entire class period.

27

28  [2]  This number assumes settlement administration fees of $15,000.

1    The Settlement's adequacy must be judged as "'a yielding to absolutes and an abandoning of

2    highest hopes . . . .'  Naturally, the agreement reached normally embodies a compromise; in exchange

3    for the saving of cost and elimination of risk, the parties each give up something they might have won

4    had they proceeded with litigation . . . ." *Officers for Justice*, 688 F.2d at 624 (citation omitted; second

5    alteration in original).  Therefore, considering the potential recovery, the probability of lengthy litigation

6    in the absence of settlement, and the risks that the Class would not have been able to succeed at trial and

7    that a jury could award lower damages, the amount of the Settlement is well within the range of

8    reasonableness.

9                    **c.    Informal Discovery Supports Approval.**

10    "'[I]n the context of class action settlements, "formal discovery is not a necessary ticket to the

11    bargaining table" where the parties have sufficient information to make an informed decision about

12    settlement.'"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted); *see*

13    *also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving

14    settlement where informal discovery gave parties clear view of strength and weaknesses of their cases).

15    The parties here engaged in informal discovery.  Defendants produced payroll records, pay

16    frequency information, final pay check dates, and overtime data. (Nergaard Decl. ¶ 5.)  Defendants also

17    produced a sample of contemporaneous time records that were prepared by class members. (*Id.*)  The

18    time records included Service Associate hours worked and a description of the job duties performed

19    each day.

20    These documents and data provided class counsel with the facts needed to settle this class action:

21    data relating to the weeks and hours worked by the class members, salaries, final pay dates, and

22    descriptions of job duties.  Based on this information, counsel formed educated assessments about the

23    strength of plaintiff's claims, the validity of the defenses, and the value of the case.

24                    **d.    Earlier Payment Supports Approval.**

25    This Court also should consider that the Settlement provides for payment to the Class now, rather

26    than a speculative payment many years down the road.  If the litigation were to continue, and if the

27    plaintiff was to prevail, payment would occur at some indeterminate time in the future.  Even though

28    trial is not presently scheduled, defendants are determined to appeal after all issues are finally resolved

1  in the trial court. An appeal, of course, might last another year or two, or even more. If the appellate

2  court were to overturn the verdict, the case might be remanded to the trial court for further proceedings

3  which, again, could last indefinitely.

4      This delay and the risks inherent in continued litigation led plaintiff to conclude that fighting the

5  lawsuit to the bitter end was not the wise course. The Settlement calls for approximately $265,000 to be

6  paid to the class members now. If the litigation continues, the class members may receive nothing at all

7  or may receive much less at some distant time in the future.

8              **2.    The Fairness of the Distribution Supports Approval.**

9      The parties not only believe that the total settlement is fair to the Class, but plaintiff contends and

10  defendants do not contest that the proposed awards of $100,000 in attorney's fees and $12,500 in

11  reimbursed litigation expenses and $5,000 to the Class Representative to reimburse her for the time,

12  effort, and risk demanded by this litigation are fair and reasonable. The parties also propose to pay out

13  of the Maximum Settlement Amount $1,500 to the LWDA and reasonable costs and expenses to the

14  third-party claims administrator. (Settlement Agreement, §§ III.A, III.C-E.)

15              **a.    The Plan of Allocation for Distributing the Settlement to the Class
                        Members**

16

17      The plan for allocating and distributing the Settlement to the class members is set forth in detail

18  in the Settlement Agreement. After preliminary approval of the Settlement, defendants will provide the

19  Settlement Administrator with the number of work weeks that each class member worked, based on

20  payroll records. (Settlement Agreement, § III.F.3.) Each class member's portion will be a *pro rata*

21  share based upon the number of weeks that the class member worked during the class period. (*Id.*, §

22  III.A.)

23      The parties believe that this method for determining how much each member should receive

24  possesses the dual advantages of efficiency and fairness.

25              **b.    Settlement Administration**

26      The parties have agreed to propose Rust Consulting, Inc. ("Rust") as the Settlement

27  Administrator here. Rust is an experienced administrator of class action settlements, including those of

28  employment claims, and the parties believe it will faithfully and competently carry out its obligations to

1    administer their Settlement.

2        Rust's duties with respect to the Settlement are set forth in the Settlement Agreement.

3    Reasonable fees and expenses will be paid from the Settlement fund. (Settlement Agreement, § III.E.)

4                    **c.    Employer Taxes**

5        Defendants will pay the employer's share of payroll taxes from their own assets and not from the

6    Settlement fund. (*Id.*, § III.B.3.)

7                    **d.    Residual**

8        The entire Settlement will be paid out; none will revert to defendants. If the residual amount of

9    Settlement checks that are uncashed after 120 days is more than $15,000, then the residual will be

10    distributed to all Claimants on a *pro rata* basis according to the value of their Settlement Share. If the

11    amount is less than or equal to $15,000, the funds represented by the check will be distributed as

12    follows: fifty percent (50%) to the United Way of Forsyth County, North Carolina, and fifty percent

13    (50%) to the Family & Children's Law Center of San Rafael, California. (*Id.*, § III.F.14.)

14            **3.    The Class Notice/Settlement Share/Election Not To Participate**

15        If the Court conditionally certifies a settlement class and preliminarily approves the settlement, it

16    must direct the "best notice practicable" under the circumstances to the class members. FED. R. CIV. P.

17    23(c)(2)(B), 23(e)(1)(B). Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually

18    received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner

19    "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

20    action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

21    *Trust Co.*, 339 U.S. 306, 314 (1950).

22        Here, the parties have agreed to provide notice by first-class mail to class members, whose last-

23    known names and addresses are available to defendants. (Settlement Agreement, § III.F.3.) In addition,

24    the Settlement Administrator will process class member addresses provided by defendants through the

25    National Change of Address database and will use all standard skip tracing methods to obtain

26    forwarding addresses and forward return mail to ensure that the Notice, and the Claim Form and

27    instructions are sent to all class members. (*Id.*) Notice by this method clearly suffices.

28        Apart from the manner of notice, Rule 23(c)(2)(B) also sets forth requirements regarding the

1    content of the notice. The notice must concisely and clearly state in plain, easily understood language:

2      (a)  the nature of the action;

3      (b)  the definition of the class certified;

4      (c)  the class claims, issues, or defenses;

5      (d)  that class member may enter an appearance through counsel if the member so desires;

6      (e)  that the court will exclude from the class any member who requests exclusion, stating

7         when and how members may elect to be excluded; and

8      (f)  the binding effect of a class judgment on class members under Rule 23(c)(3).

9      Here, the proposed notice (attached to the Settlement Agreement as Exhibit A) complies fully

10   with Rule 23(c)(2)(B). Courts routinely approve class notices even when they provide only general

11   information about a settlement. *See, e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir.

12   1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs.*

13   *Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement

14   generally"). The class notice drafted by the parties provides more than adequate notice about the

15   Settlement.

16     In addition, accompanying the class notice will be a Claim Form and Consent to Join FLSA

17   Collective Action that sets forth the number of work weeks that defendants' records show for the Class

18   Member and an estimate of the Class Member's Settlement Share, Settlement Agreement, Exh. B; a

19   form by which Class Member may dispute the number of work weeks shown, *id.*; and a form of Election

20   Not to Participate if the Class Member wishes to opt out of the Settlement, *id.*, Exh. C.

21     Class Members thus will be provided with all of the information they need to make an informed

22   choice whether to be part of the Settlement.[3]

23   **V.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING**

24     The last step in the settlement approval process is the final approval hearing, where members of

25

---

26   [3]  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), after filing this
27   motion for preliminary approval, Defendants will give the required notice of the Settlement to the
     Attorney General of the United States and the appropriate officials of the states where Class Members
28   are known to reside (*see* Settlement Agreement, § III.F.2, Exh. D), and will file a declaration of
     compliance with CAFA prior to the hearing on the motion.

-16-

1  the Settlement Class who timely submit objections to the Settlement may be heard, and the court makes

2  a final determination about the propriety of the settlement. FED. R. CIV. P. 23(e)(1). Based on the

3  timetable for giving notice and submitting objections to the Settlement,[4] the parties request that the

4  fairness hearing in this case be scheduled for on or after December 16, 2008.

5  **VI.    CONCLUSION**

6      The parties reached a fair compromise that does not excessively reward class members for weak

7  claims, or sell them short for strong claims. The Settlement is fair, reasonable and adequate in all

8  respects. Thus, this Court should grant the parties' joint motion for preliminary approval of the

9  Settlement in its entirety and adopt the proposed order submitted with this motion.

10     Dated: June 16, 2008.        EDWARD J. WYNNE
                                     J.E.B. PICKETT
11                                   WYNNE LAW FIRM

12

13                                   By: _____/s/_____
14                                           Edward J. Wynne
                                           Attorneys for Plaintiff
15                                             TINA HOPSON

16     Dated: June 16, 2008.        M. KIRBY WILCOX
                                     JEFFREY D. WOHL
17                                   ANNE W. NERGAARD
                                     PAUL, HASTINGS, JANOFSKY & WALKER LLP
18

19                                   By: _____/s/_____
20                                           Jeffrey D. Wohl
                                           Attorneys for Defendants
21                                   HANESBRANDS INC. and SARA LEE
                                           CORPORATION
22

23

24

25

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]    A proposed timetable for the settlement approval process appears as Exhibit 2 to the Nergaard
28  Declaration.