1   [Counsel of record listed on next page]

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  | TINA HOPSON, individually and on behalf of others similarly situated, | No. CV-08-0844 EDL |
|---|---|
| | **JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Plaintiff, | |
| vs. | Date:       July 22, 2008 |
| | Time:       9:00 a.m. |
| HANESBRANDS INC.; SARA LEE CORPORATION and Does 1 through 50, inclusive, | Courtroom:  E (15th Floor) |
| | Judge:      Hon. Elizabeth D. Laporte |
| Defendants. | |

1    EDWARD J. WYNNE (Bar No.165819)
     J.E.B. PICKETT (Bar No. 154294)
2    WYNNE LAW FIRM
     100 Drakes Landing Road, Suite 275
3    Greenbrae, California 94904
     Telephone: 415.461-6400
4    Facsimile: 415.461-3900
     ewynne@wynnelawfirm.com
5    jebpickett@wynnelawfirm.com

6    Attorneys for Plaintiff
     TINA HOPSON
7

8    M. KIRBY C. WILCOX (Bar No. 078576)
     JEFFREY D. WOHL (Bar No. 96838)
9    ANNE W. NERGAARD (Bar No. 235058)
     PAUL, HASTINGS, JANOFSKY & WALKER LLP
10   55 Second Street, 24th Floor
     San Francisco, California 94105-3441
11   Telephone: 415.856.7000
     Facsimile: 415.856.7100
12   kirbywilcox@paulhastings.com
     jeffwohl@paulhastings.com
13   annenergaard@paulhastings.com

14   Attorneys for Defendants
     HANESBRANDS INC. and
15   SARA LEE CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_E # 80265981.4

## I.  INTRODUCTION

On July 22, 2008, at the hearing on the parties' Joint Motion for Order: (1) Conditionally Certifying Settlement Class and Collective Action; (2) Preliminarily Approving Proposed Settlement; (3) Approving Notice to Class and Election Not to Participate; (4) Approving Notice of Proposed Settlement; and (5) Setting Final Approval Hearing Date, the Court requested certain additional information. The parties submit this joint supplemental brief in response to the Court's request.

## II.  REASONABLENESS OF THE SETTLEMENT

The Court has asked how the parties determined that the amount of the settlement ($400,000) is reasonable.

### A.  Maximum Exposure Estimates

Defendants estimate and plaintiff does not dispute the following potential exposure estimates:

- **California Class:** The potential recovery is estimated at approximately $740,000 for the Full-Time California Class and $123,000 for the Part-Time Class. Declaration of Anne W. Nergaard in Support of Joint Motion for Preliminary Approval for Class Action Settlement ("Nergaard Decl."), ¶ 4.

- **Non-California Class:** The potential recovery is estimated at approximately $163,000 for the Full-Time Non-California Class. *Id.*

Among other things, these estimates assume the following: (i) each class is certified; (ii) the Full-Time Class prevails on the misclassification claims; (iii) the California Class is awarded the maximum penalties provided under the California Labor Code;[1] (iv) all class members worked one hour of overtime per week;[2] (v) the California Full-Time Class was denied 2.5 meal periods per week. The

---

[1]    In her complaint, plaintiff requested overtime wages, waiting time penalties, and civil penalties pursuant to California Labor Code sections 210, 226, 226.3, 558, 1174.5, 1197.1, and 2699. The damage estimates exclude penalties under sections 1174.5, 1197.1, and 2699. Nergaard Decl., ¶ 3. Section 1174.5 provides for $500 penalties total; section 1197.1 penalties are for violation of the Labor Code minimum wage provision (which plaintiff concedes was not violated); and section 2699 provides for penalties "[f]or all provisions of this code *except those for which a civil penalty is specifically provided.*" Cal. Labor Code §§ 1174.5, 1197.1, 2699(f) (emphasis added). Civil penalties are provided in sections 210, 226, 226.3, and 558, and therefore, section 2699 penalties are not available to plaintiff.

[2]    The FLSA fluctuating workweek method of calculating overtime was used for the Non-California class. Nergaard Decl., ¶ 3. The FLSA permits use of this method of calculating overtime. *See* 29 C.F.R. § 778.114(a).

1    $400,000 settlement therefore represents 39% of the maximum potential recovery of $1,026,000.

2    **B.    Factors Supporting the Settlement Discount**

3    The facts and law showed support the discounted settlement. For example:

4    ▪    Hanesbrands believes that it has a complete defense under the California and federal

5    administrative exemptions and a partial defense under the Motor Carrier Act. Dkt. 11, at

6    18-19;[3] *see also* Section III.B., *infra*.

7    ▪    Class certification would be difficult and defendant had several strong defenses to the

8    exemption claim. Dkt. 11, at 18-19.

9    ▪    Service Associates worked fewer than one hour of overtime. Nergaard Decl., ¶ 6.

10    ▪    Plaintiff could not demonstrate that there was a "willful" or "knowing and intentional"

11    violation of the California Labor Code, which is required for maximum penalties under

12    Labor Code sections 210 and 226.

13    ▪    Under California Labor Code section 226.7, Hanesbrands "provided" Service

14    Associates—who structured their own schedule and had the opportunity to take breaks as

15    they wished—with meal periods and rest breaks under the law. Declaration of Kathy

16    Gugino in Support of Joint Motion for Preliminary Approval for Class Action Settlement

17    ("Gugino Decl."), ¶ 4.[4]

18    Given these defenses, a recovery of 39% is reasonable. *Officers for Justice v. Civ. Serv.*

19    *Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to

20

21    [3]    *See also Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 7 (1st Cir. 1997) (marketing

22    representatives qualify for administrative exemption); *Copas v. East Bay Mun. Util. Dist.*, 61 F. Supp. 2d 1017, 1041 (N.D. Cal. 1999) (granting summary judgment for employer based on administrative

23    exemption as to five employees who performed promotional duties, including responsibility for internal and external business-related communications); *Levie v. AT&T Comm'ns, Inc.*, 1990 WL 61174, at *1

24    (N.D. Ga. Mar. 15, 1990) (employee who was responsible for coordination and implementation of internal telecommunications projects qualified for administrative exemption; plaintiff "would meet with

25    clients' supervisors and technicians, would determine client needs, would assess client concerns and seek to address them, and would seek to arrange or renegotiate initial project design").

26    [4]    This week, the Fourth Appellate District of the California Court of Appeal ruled that "employers need not ensure meal breaks are actually taken, but need only make them available." *Brinker Restaurant*

27    *Corp. v. Hohnbaum*, -- Cal. Rptr. 3d --, 2008 WL 2806613, at *21 (Cal. Ct. App. July 22, 2008); *see also Brown v. Fed. Express Corp.*, 2008 U.S. Dist. LEXIS 17125 (C.D. Cal. Feb. 26, 2008); *White v.*

28    *Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088-89 (N.D. Cal. 2007).

LEGAL US E # 80265981.4

1  only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").[5]

2  **III.    HANESBRANDS' DEFENSES**

3      This Court posed two questions regarding Hanesbrands' defenses:

4      **A.    The Old DOL Regulation**

5      First, the Court requested a copy of the old Department of Labor ("DOL") regulation cited in the

6  Joint Motion (29 C.F.R. § 541.205 (2004)).  A copy of the old regulation is attached to the Nergaard

7  Declaration as Exhibit A.

8      The old DOL regulation provided that "[t]he test of 'directly related to management policies or

9  general business operations' is also met by many persons employed as advisory specialists and

10  consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate

11  analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange

12  firms, *promotion men*, and many others."  *See* 29 C.F.R. § 541.205(c)(5) (2004) (emphasis added).  The

13  old regulation further provided that "[t]he administrative operations of the business include the work

14  performed by so-called white-collar employees engaged in 'servicing' a business as, for example,

15  *advising the management*, planning, *negotiating, representing the company*, purchasing, *promoting*

16  *sales*, and business research and control."  *See id.* § 541.205(b) (emphasis added).  The old DOL

17  regulation is expressly incorporated into the current California Wage Orders.  *See* I.W.C. Order 4-

18  2001(1)(A)(2)(f) (incorporating federal regulations in effect as of January 1, 2001, when wage orders

19  enacted).

20      **B.    The Motor Carrier Act Defense**

21      Second, the Court requested additional information regarding the Motor Carrier Act defense,

22

23
───────────────────────

24  [5]   *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) ("The fact that
    a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself,

25  mean that the proposed settlement is grossly inadequate and should be disapproved."), *overruled in part
    on other grounds, U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989); *In*

26  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (upholding settlement of
    approximately one-sixth the potential recovery); *Shlensky v. Dorsey*, 574 F.2d 131, 147-48 (3d Cir.

27  1978) (upholding settlement equating to approximately 15% (excluding attorneys' fees) of the potential
    recovery; the settlement amount "can hardly be said to provide a grossly inadequate benefit ... in view of

28  the uncertainties of this litigation").

JT. SUPP. BRIEF ISO PRELIMINARY APPROVAL
U.S.D.C., N.D. Cal., No. CV-08-0844-EDL

1   which defendants contend[6] was applicable to Service Associates outside of California prior to

2   August 10, 2005.[7]

3          Generally, to fall within the MCA exemption, employees must meet three requirements. First,

4   they must transport property. *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 415 (3d Cir. 1992).

5   Second, they must transport property in interstate commerce. *Southern Pac. Trans. Co. v. ICC*, 565 F.2d

6   615, 617 (9th Cir. 1977). An employee "does not have to cross state lines to engage in interstate

7   commerce." *McGee v. Corporate Exp. Delivery Sys.*, 2003 WL 22757757, at *4 (N.D. Ill. 2003).

8   Third, they must have a reasonable expectation of driving in interstate commerce. An employee need

9   not regularly drive in interstate commerce to fall within the Motor Carrier exemption. "[E]ven a minor

10   involvement in interstate commerce as a regular part of an employee's duties can subject that employee

11   to the Secretary of Transportation's jurisdiction." *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155-

12   56 (9th Cir. 1994). The DOT has determined in an interpretive ruling that it has jurisdiction over a

13   driver who is "subject to being called on, to drive in interstate commerce as part of the driver's regular

14   employment .... [or] even if the driver has not personally driven in interstate commerce if, because of

15   company policy and activity, the driver could reasonably be expected to do interstate driving." 46 Fed.

16   Reg. 37903 (1981) (emphasis added). Consistent with this, the DOL regulations indicate that if "a

17   member of a group of drivers ... is likely to be ... called upon in the ordinary course of his work to

18   perform, either regularly or from time to time, safety-affecting occupations ..., he comes within the

19   exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3).

20          Hanesbrands contends that prior to August 10, 2005, Service Associates were exempt under the

21

---

22 [6]   While the Court requested additional briefing concerning defendants' defenses, plaintiff continues to deny that Service Associates meet the requirements for exemption under the administrative exemption and/or the Motor Carrier Act.

23 [7]   Effective August 10, 2005, the MCA was limited by the Safe, Accountable, Flexible, Efficient

24 Transportation Act ("SAFETEA"). This law limited the Secretary's jurisdiction under the MCA to vehicles that have a gross vehicle weight of 10,001 pounds or more, or "heavy" vehicles. P.L. Sec.

25 4142(a) (August 10, 2005). The MCA exemption is not applicable to employees in California who drive vehicles that weigh less than 10,001 pounds. In California, the employee's hours of service must be

26 actually regulated by "the United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers." Wage Order 4-2001, § 3(K)(1). The

27 DOT regulates vehicles that have "a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1)(A). Therefore, to fall within the MCA

28 exemption in California, the employee must drive a vehicle that weighs at least 10,001 pounds.

LEGAL US E # 80265981.4

1    MCA.  Hanesbrands shipped property from North Carolina or New York to each Service Associate's

2    house for final delivery to specific stores.  Gugino Decl., ¶ 5.  Service Associates, who drive to stores

3    daily, delivered the property to the stores.  *Id.*  This exemption removed from plaintiff's proposed class a

4    substantial number of workweeks.

5    **IV.    RESIDUAL DUE TO UNCASHED CHECKS**

6         The Settlement provides that any residual due to uncashed checks that is more than $15,000 will

7    be redistributed to the class.  Dkt. 12, at 19.   If the amount is equal to or less than $15,000, the funds

8    represented by the check will be distributed as follows: fifty percent to the United Way of Forsyth

9    County, North Carolina ("United Way"); fifty percent to the Family & Children's Law Center of San

10   Rafael, California ("Law Center").  *Id.*  The Court has asked two questions regarding this provision.

11        **A.    The Amount of the Residual**

12        First, the Court asked why the parties selected $15,000 as the breakpoint of the residual to be

13   redistributed to the class.  If the parties selected a lower amount, it is likely that the settlement

14   administration fees would exceed the amount redistributed to the class.  The Maximum Settlement

15   Amount is $400,000.  Dkt. 12, at 2.  To redistribute amounts to class members, the class would incur

16   costs for re-calculation of the distribution, employer and employee payroll taxes, FICA, FUTA, SSI, and

17   the costs of cutting and mailing the residual checks.  The administrator fees, costs and employee shares

18   of payroll taxes would be deducted from that residual amount.  This would further reduce the amount

19   redistributed to class members.  Thus, a cutoff of $15,000 was estimated to be a point at which the costs

20   to the class outweighed any benefit that could be received.

21        **B.    The Beneficiary Charities**

22        Second, the Court asked why the parties selected the charities.  Each party selected one charity.

23   Hanesbrands selected United Way because of its long-standing relationship with that organization.  Dkt.

24   12, at 19; Declaration of Christopher Fox in Support of Joint Motion for Preliminary Approval for Class

25   Action Settlement ("Fox Decl."), ¶¶ 3-5.  Among other things, Hanesbrands and its employees donate

26   money to United Way.  *Id.*  Hanesbrands also encourages its employees to volunteer their time to United

27   Way.  *Id.* ¶ 4.

28        The plaintiff selected the Law Center because the lawsuit originally was filed in Marin County,

JT. SUPP. BRIEF ISO PRELIMINARY APPROVAL
U.S.D.C., N.D. Cal., No. CV-08-0844-EDL

LEGAL US E # 80265981.4

and the plaintiff was employed by Hanesbrands in Marin County. This organization provides families and children with legal representation on such matters as child abuse, domestic violence, child custody and support.

## V.    REPRESENTATIVE ENHANCEMENT AWARD[8]

The Court also inquired as to the reasonableness of the enhancement award to the class representative, Tina Hopson, with respect to the settlement amount in this action. As the Court was informed at the hearing, Ms. Hopson played an integral part in assisting plaintiff's counsel in the prosecution of this action. Ms. Hopson responded to multiple requests for information, reviewed a myriad of documents produced by defendants, authenticated documents and applicable times for policies and procedures instituted by defendants and was a general source of invaluable information which assisted in the parties reaching a settlement of this action. A declaration from Ms. Hopson will be provided to the Court in support of the Motion for Final Approval and Attorneys' Fees.

## VI.    CONCLUSION

As the parties discuss in their joint motion for preliminary approval, this class action settlement was reached after arms-length negotiation and in light of the substantial risks of continued litigation to both plaintiff and Hanesbrands. The parties hope that the information provided above satisfies the Court that their settlement is fair, adequate, and reasonable. The parties respectfully urge the Court to grant preliminary approval.


Dated:  July 24, 2008.        By: _____/s/_____
                                              J.E.B. Pickett
                                              Attorney for Plaintiff
                                              TINA HOPSON


Dated:  July 24, 2008.        By: _____/s/_____
                                              Jeffrey D. Wohl
                                              Attorney for Defendants
                                              HANESBRANDS INC. and SARA LEE CORP.

---

[8]    This section is submitted by plaintiff only. Pursuant to the settlement, while defendants do not contest plaintiff's request for a class representative fee, they also do not join in the request or any representation made by plaintiff in support of the request.

LEGAL US E # 80265981.4