1  M. KIRBY C. WILCOX (Cal. State Bar No. 078576)
   JEFFREY D. WOHL (Cal. State Bar No. 96838)
2  ANNE W. NERGAARD (Cal. State Bar No. 235058)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
3  55 Second Street, 24th Floor
   San Francisco, California 94105-3441
4  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100
5  kirbywilcox@paulhastings.com
   jeffwohl@paulhastings.com
6  annenergaard@paulhastings.com

7
   Attorneys for Defendants
8  HANESBRANDS INC. and
   SARA LEE CORPORATION
9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11

12
   | TINA HOPSON, individually and on behalf | No. CV 08-0844 EDL |
13 | of all others similarly situated, | |
   | | **DECLARATION OF ANNE W.** |
14 | Plaintiff, | **NERGAARD IN SUPPORT OF JOINT** |
   | | **MOTION FOR PRELIMINARY** |
15 | vs. | **APPROVAL OF CLASS ACTION** |
   | | **SETTLEMENT** |
16 | HANESBRANDS INC.; SARA LEE | |
   | CORPORATION and DOES 1 through 50, | Date:      July 22, 2008 |
17 | inclusive, | Time:      9:00 a.m. |
   | | Courtroom: E (15th Floor) |
18 | Defendants. | Judge:     Hon. Elizabeth D. Laporte |

19

20

21

22

23

24

25

26

27

28

I, Anne W. Nergaard, declare:

1. I am admitted to the Bar of this Court, an associate at Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), and one of the attorneys representing defendants Hanesbrands Inc. ("Hanesbrands") and Sara Lee Corporation in this action. I make this declaration in support of the joint motion for preliminary approval of the class action settlement, filed on June 16, 2008, and in response to the Court's July 22, 2008, request for supplemental briefing. Except where stated on information and belief, I have personal knowledge of the facts set forth in this declaration, and could and would competently testify to them under oath if called as a witness.

2. Attached to this declaration as Exhibit A is a true copy of 29 C.F.R. § 541.205 (2004).

3. In connection with the litigation and mediation, I instructed a Paul Hastings employee to calculate the potential liability in this matter for (i) all persons who worked as full-time Service Associates for Hanesbrands in California between May 22, 2003, and September 1, 2007 (the "Full-Time California Class"); (ii) all persons who worked as part-time Service Associates for Hanesbrands in California between May 22, 2004, to September 1, 2007 (the "Part-Time California Class"); and (iii) all persons who worked as full-time Service Associates for Hanesbrands anywhere in the United States outside of California between May 22, 2004, and September 1, 2007 (the "Full-Time Non-California Class"). The calculation included overtime for the Full-Time Classes and penalties for the California Classes under California Labor Code sections 210, 226, 226.3, and 558. The FLSA fluctuating workweek method of overtime calculation was used to estimate the exposure for the Full-Time Non-California class.

4. The calculations showed that the potential maximum recovery for the Full-Time California Class was approximately $740,000; for the Part-Time California Class, approximately $123,000; and for the Full-Time Non-California Class, approximately $163,000.

5. This calculation was based on several legal and factual assumptions. For example, it assumed that the California Class prevailed on all penalty claims, at the maximum amount provided under the Labor Code; that plaintiff prevailed on her motion for class certification; and that plaintiff prevailed on liability. This calculation also assumed that the Full-Time California Class missed 2.5 meal periods per week, and that the Full-Time Class worked one hour of overtime per week.

6. In connection with the litigation and mediation, I also instructed a Paul Hastings employee to calculate estimated overtime based on a sample of the call reports, contemporaneous time records showing the number of hours worked per week. This calculation indicated that Service Associates performed approximately 0.61 hours of overtime per week. I am informed and believe that Service Associates were reclassified to non-exempt employees on September 1, 2007. I reviewed an overtime data file (produced to plaintiff in this litigation), which included overtime hours worked and wages paid by pay period between September 1, 2007 and February 1, 2008. The only overtime recorded during this time period occurred during the week of a meeting in Chicago, Illinois. I am informed and believe that this overtime was for travel to and from the meeting.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this was executed on July 24th, 2008, at San Francisco, California.

*Anne W. Nergaard* (signature)
Anne W. Nergaard

# EXHIBIT A

and closely related to the work requiring the exercise of discretion and independent judgment is not inconsistent with the principle that the exemption is limited to "white-collar" employees. However, if the employee performs so much manual work (other than office work) that he cannot be said to be basically a "white-collar" employee he does not qualify for exemption as a bona fide administrative employee, even if the manual work he performs is directly and closely related to the work requiring the exercise of discretion and independent judgment. Thus, it is obvious that employees who spend most of their time in using tools, instruments, machinery, or other equipment, or in performing repetitive operations with their hands, no matter how much skill is required, would not be bona fide administrative employees within the meaning of § 541.2. An office employee, on the other hand, is a "white-collar" worker, and would not lose the exemption on the grounds that he is not primarily engaged in "nonmanual" work, although he would lose the exemption if he failed to meet any of the other requirements.

### § 541.205 Directly related to management policies or general business operations.

(a) The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

(b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business.

(c) As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

(1) It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. It should be clear that the cashier of a bank performs work at a responsible level and may therefore be said to be performing work directly related to management policies or general business operations. On the other hand, the bank teller does not. Likewise it is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management policies or general business operations. On the other hand, a tax consultant employed either by an individual company or by a firm of consultants is ordinarily doing work of substantial importance to the management or operation of a business.

(2) An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he

**Wage and Hour Division, Labor**                                                                 **§ 541.205**

performs his clerical tasks. A messenger boy who is entrusted with carrying large sums of money or securities cannot be said to be doing work of importance to the business even though serious consequences may flow from his neglect. An employee operating very expensive equipment may cause serious loss to his employer by the improper performance of his duties. An inspector, such as, for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related to management policies or general business operations" as that phrase is used in § 541.2.

(3) Some firms employ persons whom they describe as "statisticians." If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations. Similarly, a personnel employee may be a clerk at a hiring window of a plant, or he may be a man who determines or effects personnel policies affecting all the workers in the establishment. In the latter case, he is clearly doing work directly related to management policies or general business operations. These examples illustrate the two extremes. In each case, between these extreme types there are many employees whose work may be of substantial importance to the management or operation of the business, depending upon the particular facts.

(4) Another example of an employee whose work may be important to the welfare of the business is a buyer of a particular article or equipment in an industrial plant or personnel commonly called assistant buyers in retail or service establishments. Where such work is of substantial importance to the management or operation of the business, even though it may be limited to purchasing for a particular department of the business, it is directly related to management policies or general business operations.

(5) The test of "directly related to management policies or general business operations" is also met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others.

(6) It should be noted in this connection that an employer's volume of activities may make it necessary to employ a number of employees in some of these categories. The fact that there are a number of other employees of the same employer carrying out assignments of the same relative importance or performing identical work does not affect the determination of whether they meet this test so long as the work of each such employee is of substantial importance to the management or operation of the business.

(7) In the data processing field some firms employ persons described as systems analysts and computer programers. If such employees are concerned with the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems of his employer or his employer's customers, he is clearly doing work directly related to management policies or general business operations.

(d) Under § 541.2 the "management policies or general business operations" may be those of the employer or the employer's customers. For example, many bona fide administrative employees perform important functions as advisers and consultants but are employed by a concern engaged in furnishing such services for a fee. Typical instances are tax experts, labor relations consultants, financial consultants, systems analysts, or resident buyers. Such employees, if they meet the other requirements of § 541.2, qualify for exemption regardless of whether the management policies or general

business operations to which their work is directly related are those of their employer's clients or customers or those of their employer.

### § 541.206 Primary duty.

(a) The definition of "administrative" exempts only employees who are primarily engaged in the responsible work which is characteristic of employment in a bona fide administrative capacity. Thus, the employee must have as his primary duty office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers, or, in the case of "academic administrative personnel," the employee must have as his primary duty work that is directly related to academic administration or general academic operations of the school in whose operations he is employed.

(b) In determining whether an employee's exempt work meets the "primary duty" requirement, the principles explained in § 541.103 in the discussion of "primary duty" under the definition of "executive" are applicable.

### § 541.207 Discretion and independent judgment.

(a) In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term as used in the regulations in subpart A of this part, moreover, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. (Without actually attempting to define the term, the courts have given it this meaning in applying it in particular cases. See, for example, *Walling v. Sterling Ice Co.*, 69 F. Supp. 655, reversed on other grounds, 165 F. (2d) 265 (CCA 10). See also *Connell v. Delaware Aircraft Industries*, 55 Atl. (2d) 637.)

(b) The term must be applied in the light of all the facts involved in the particular employment situation in which the question arises. It has been most frequently misunderstood and misapplied by employers and employees in cases involving the following: (1) Confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and (2) misapplication of the term to employees making decisions relating to matters of little consequence.

(c) Distinguished from skills and procedures:

(1) Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of § 541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

(2) A typical example of the application of skills and procedures is ordinary inspection work of various kinds. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been cataloged and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits. Employees of this type may make recommendations on the basis of the information they develop in the course of their inspections (as for example, to accept or reject an insurance risk or a product manufactured to specifications), but these recommendations are based on the development of the facts as to whether there is conformity with the prescribed standards. In such cases a decision to depart from the prescribed standards or the permitted tolerance is typically made by the inspector's superior. The

HeinOnline -- CFR 202 2003